IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**FILED**

JAN 1 8 2005

MICHAEL W. DOBBINS
CLERK. U.S. DISTRICT COURT

JUDGE SHADUR

05C 0317

MAGISTRATE JUDGE KEYS

| | |
|---|---|
| LAURA RAMIREZ, JAMES RAMIREZ, and ANTHONY RAMIREZ, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CITY OF CHICAGO, CHICAGO POLICE OFFICERS CESAR CLAUDIO, MIKE WALSH, JOHN JOHNSON, M. O'DONNELL, TIMOTHY SHANAHAN, EGAN, HAROLD, FINNEGAN, LIEUTENANT ERNEST, SERGEANT COLE, and AS-YET UNKNOWN CHICAGO POLICE OFFICERS, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs, LAURA RAMIREZ, JAMES RAMIREZ, and ANTHONY RAMIREZ,

through their attorneys, LOEVY & LOEVY, complain of Defendants, CITY OF

CHICAGO, CHICAGO POLICE OFFICERS CESAR CLAUDIO (Star No. 19132),

MIKE WALSH, JOHN JOHNSON, M. O'DONNELL (Star No. 6029), TIMOTHY

SHANAHAN (Star No. 12531), EGAN, HAROLD, FINNEGAN, LIEUTENANT

ERNEST, SERGEANT COLE, and AS-YET UNKNOWN CHICAGO POLICE

OFFICERS, as follows:

### Introduction

1.     This action arises from the Defendants unlawful use of police power

to retaliate against Plaintiffs after Plaintiff Laura Ramirez was a witness to police

misconduct in the Chicago Police Department's 8th District. It is brought under 42

U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

### Jurisdiction and Venue

2.     This Court has jurisdiction of the action under 28 U.S.C. § 1331. Venue is proper as Laura, Anthony and James Ramirez are all residents of this judicial district and Defendant, City of Chicago, is a municipal corporation located here. Further, the events giving rise to the claims asserted here all occurred within this district.

### Background

3.     In or about July 2002, Plaintiff Laura Ramirez became involved as a witness in a case concerning one of her neighbors, Janice Kasper, who is a Chicago Police officer. Ms. Ramirez testified at Ms. Kasper's criminal trial and directly rebutted testimony from Chicago Police officers who assaulted Ms. Kasper. Those officers had claimed that Ms. Kasper had assaulted them. Laura Ramirez also was a witness for Ms. Kasper in a later civil rights lawsuit in this Court that was settled.

4.     Since that time, Ms. Ramirez and her children have been the victims of retaliation and abuse of police and state authority from several members of the Chicago Police Department's 8th District, including officers who are neighbors of the Ramirez family and are, therefore, in a good position to harass and retaliate against the Ramirez family.

5.     As outlined below, the harassment has taken many forms, including but not limited to the use of excessive force, unlawful searches and seizures, false arrests and

2

false imprisonments, malicious prosecutions, and imposing thousands of dollars of

parking tickets against members of the Ramirez family.

6.  Laura Ramirez has worked for the International Brotherhood of Teamsters

for 16 years.  She has lived at 6116 S. Knox, Chicago, Illinois for 15 years.  Ms. Ramirez

has four children Plaintiff James Ramirez, Plaintiff Anthony Ramirez,  Samantha

Ramirez, and Richard Ramirez.   Plaintiff James Ramirez is 24 years old and works as a

union metal refinisher.  Plaintiff Anthony Ramirez is 18 years old and graduated from

high school in spring 2004.

7.  In the Ramirez neighborhood reside many Chicago Police officers,

including officers Janice Kasper and Defendant Claudio.

8.  On July 14, 2002, Janice Kasper was the victim of excessive force at the

hands of other Chicago Police officers from the Chicago Police Department's 8th District.

9.  Ms. Kasper filed an internal complaint with the Chicago Police Department

and later filed a civil rights lawsuit in the U.S. District Court for the Northern District of

Illinois, Case No. 04 C 1041.

10.  Plaintiff Laura Ramirez was a witness to part of the incident involving Ms.

Kasper and became known as a witness against one of their own by Chicago Police

officers from the Department's 8th District.

11.  Since that time, Ms. Ramirez and her children were subjected to retaliation

and intimidation tactics because of Ms. Ramirez's willingness to take a stand and be a

witness against police misconduct.

12.     As articulated below, Plaintiffs have all been repeatedly arrested, charged with various crimes, and all of those criminal proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

13.     As a result of Defendants' conduct, Plaintiffs have suffered damages including, but not limited to severe emotional distress and mental anguish, various physical injuries, and numerous financial expenses.

### Retaliation Against Laura Ramirez

14.     Laura Ramirez lived at her current address for 13 years before 2002. During that time, she had no difficulty with the Chicago Police. Since that time, her home and property have been the constant subject of police activity.

15.     In late 2002, an as-yet unknown Chicago Police officer, without any justification or cause, entered Laura Ramirez's home. That incident was captured on security cameras kept in and about the residence.

16.     Since July 2002, on several occasions, as-yet unknown Chicago Police officers have conducted warrantless searches without any cause of Laura Ramirez's garage, behind her house.

17.     Since July 2002, on numerous occasions, Laura Ramirez has observed Defendants Claudio, Ernest and Cole drive slowly by her house in marked Chicago Police cars and each has waved to her in a mocking and menacing manner or stuck his middle finger in the air in Ms. Ramirez's direction.

4

18.     Since July 2002, Defendants Egan, Harold, Shanahan, Cole and other as-yet unknown Chicago Police Officers have threatened to kill Laura Ramirez's pet dog by pointing their guns at it and threatening to shoot it.

19.     In early winter 2002-2003, Defendant Ernest came to Laura Ramirez's home and took her into custody with no cause and without a warrant. He released Laura Ramirez from his custody only when she agreed to let Ernest remove a car from her garage based on a false allegation that the car presented a "hazard" in her garage.

20.     On July 30, 2003, as-yet unknown City of Chicago Police officers sent a building inspector to inspect Ms. Ramirez's single family home.

21.     On September 6, 2004, Defendant Officers Walsh, Johnson, and other as-yet unknown Chicago Police officers arrested Laura Ramirez without a warrant and without cause.

22.     On September 6, 2004, Chicago Police officers Mike Walsh, John Johnson, and as-yet unknown Chicago Police officers forcefully kicked open the back door to the Ramirez's house. Defendant Officer Johnson told another police officer to "arrest the bitch" for not opening the door to let them in.

23.     Defendant Officers Walsh, Johnson, and other as-yet unknown Chicago Police officers then entered the Ramirez house and conducted a search without a search warrant and without cause. They also tore up the house and garage. They stole Laura Ramirez's jewelry, $500 in cash, tools, and copies of surveillance video that could be

5

used to verify Laura Ramirez's retaliation claims. Indeed, an as-yet unknown officer told another officer to "get those tapes" before taking them.

## Retaliation Against James Ramirez

24.     After July 2002, James Ramirez began to receive numerous parking tickets both on his car and in the mail. Before that time, it was rare for James Ramirez to get a parking ticket. The tickets were levied against him by various as-yet unknown Chicago Police officers acting in concert with the Defendant Officers.

25.     The afore-mentioned tickets were unjustified and maliciously issued, many of the parking tickets that he received were for places where James Ramirez had not gone.

26.     Over approximately the past two years, the sum cost of the bogus tickets has exceeded $8,000.

27.     As a result of the excessive amount of tickets he received, James Ramirez's car has been booted by as-yet unknown City of Chicago employees, towed by as-yet unknown City of Chicago employees, and James Ramirez's drivers license was subjected to suspension.

28.     In addition, since July 2002, James Ramirez has been arrested approximately seven times by Defendants Claudio, Shanahan, and as-yet unknown Chicago Police officers, for things that he did not do. Not one of the arrests has led to a criminal conviction.

29.     During each arrest of James Ramirez, Defendants Claudio, Shanahan,

6

Harold, Egan, Ernest, Cole, and as-yet unknown Chicago Police officers have physically abused or harassed James Ramirez by, among other things, chaining him to various benches in the 8th District Police station and beating him with plastic binders so that it would not leave physical marks.

30.     Since July 2002, Defendants Harold, Egan and as-yet unknown Chicago Police officers have searched without cause James Ramirez's car, including searches of Mr. Ramirez's infant daughter, Jenna. Those officers have gone so far as to remove Jenna's diaper to search her.

31.     On May 26, 2003, Defendants Claudio, Shanahan, and O'Donnell again arrested James Ramirez without probable cause to believe that he committed a crime.

32.     In relation to the May 26, 2003 arrest, Defendants Claudio, Shanahan, O'Donnell, and as-yet unknown Chicago Police officers falsified evidence to seek the criminal prosecution of James Ramirez.

33.     In relation to the May 26, 2003 arrest, while James Ramirez was held in custody, Defendant O'Donnell ordered that James and Anthony Ramirez were not allowed any contact with people outside of the police station, including family members and lawyers.

34.     As-yet unknown Chicago Police officers have stated falsely to James Ramirez's landlord and others that Mr. Ramirez sells crack cocaine and is a drug dealer. They have said these things in an effort to discredit Mr. Ramirez among members of the

7

community.

35.     On September 29, 2004, as James Ramirez left his home at 5658 W. 64th

Place, two unmarked Chicago Police cars drove to the curb and Defendant Egan,

Finnegan and as-yet unknown Chicago Police officers ordered James Ramirez out of the

car and on to the ground. Mr. Ramirez was handcuffed and Egan and two as-yet

unknown officers took Mr. Ramirez's house keys and went inside his house and searched

it with no cause and no warrant allowing for a search. After searching the house, the

officers returned and gave Mr. Ramirez his keys back and let him go.

36.     In order to prevent the unjustified ticketing and towing of his car, James

Ramirez has been forced to rent off-street parking in garages. Since then, Defendant

Egan has threatened various garage owners to coerce them to evict James Ramirez from

those garages.

### Retaliation Against Anthony Ramirez

37.     On May 26, 2003, Defendants Claudio, Shanahan, and O'Donnell arrested

Anthony Ramirez without a warrant and without probable cause to believe that he

committed a crime.

38.     After taking Anthony Ramirez into custody, Defendants Claudio and

Shanahan paraded him while in handcuffs down the block where he lived in an effort to

embarrass and intimidate Anthony Ramirez among his neighbors.

39.     While being held in the 8th District Police station, Anthony Ramirez was

8

taken to a processing room in which Defendants Claudio, Shanahan, and two as-yet unknown officers ("Officers No. 1 and 2") were also in.

40.     Officer No. 1 was a uniformed officer and Officer No. 2 wore blue jeans and a black vest. Officer No. 1 was playing with a pellet gun. He then aimed it at Anthony Ramirez. Mr. Ramirez asked Officer No. 1 not to aim the gun at him, but shortly thereafter Officer No. 1 shot Anthony Ramirez in the eye, causing severe pain. Neither Defendants Claudio, Shanahan, or Officer No. 2 did anything to stop Officer No. 1 from shooting the pellet gun at Anthony Ramirez or to report the incident.

41.     Shortly thereafter, Anthony Ramirez also told Defendant O'Donnell that Officer No. 1 had shot him in the eye with a pellet gun. He took no action to remedy the situation; rather, he said that Anthony Ramirez "deserved it" or words to that effect.

42.     In relation to the May 26, 2003 arrest, Defendants Claudio, Shanahan, O'Donnell, and as-yet unknown Chicago Police officers falsified evidence to seek the criminal prosecution of Anthony Ramirez.

43.     After the May 26, 2003 arrest, Defendants held Anthony and James Ramirez for three days before they were allowed a bond hearing.

44.     In or about July 2004, as Anthony Ramirez drove his car in the alley, Defendant Egan and as-yet unknown Chicago Police officers stopped Anthony Ramirez and impounded his car for no reason.

9

## Count I – 42 U.S.C. § 1983: First Amendment Retaliation

45.     Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

46.     The First Amendment to the United States Constitution guarantees Plaintiffs' rights to speak out on matters of public concern without fear of unjust retaliation.

47.     As more fully described in the preceding paragraphs, Plaintiffs engaged in protected speech on matters of public concern when Laura Ramirez spoke out as a witness to police misconduct. In retaliation for their exercise of protected speech, Defendants retaliated against Plaintiffs in the manner described above.

48.     The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in that:

a.     As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.     As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Chicago Police

10

Officers accused of excessive force can be confident that the Office of Professional Standards will not investigate those accusations in earnest and will refuse to recommend discipline even where the Officer has engaged in excessive force;

        c.    Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

        d.    Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

        e.    The City of Chicago has failed to act to remedy the patterns of abuse describe in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

        f.    As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of excessive force against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career;

        g.    As a matter of express policy, the City of Chicago refuses to take

11

into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same sort of misconduct twenty times in row, the Office of Professional Standards ("O.P.S.") is forbidden by the City from considering those allegations if they are deemed unsustained; and

      h.    The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against police officers for violations of civil rights.

49.    As a result of Defendants' unconstitutional conduct, Plaintiffs have suffered pain and injury, as well as emotional distress.

## COUNT II – 42 U.S.C. § 1983
### Unreasonable Searches and Seizures

50.    Plaintiff restates each of the above Paragraphs as if fully stated herein.

51.    As described more fully above, Defendant Officers conducted several unconstitutional searches and seizures of Plaintiffs' homes, bodies, and cars.

52.    More specifically, Defendant Officers had neither warrants nor consents to search the home, bodies and cars of Plaintiffs, yet continued extended and unreasonable searches of their homes, bodies and cars for no purpose and with no lawful justification.

53.    Furthermore, neither the extended stays within the homes nor the actions of the Defendant Officers within the homes were lawfully justified by the circumstances

12

confronting the officers.

54.    As a result of the violation of their constitutional rights described above, Plaintiffs suffered damages, including but not limited to emotional distress.

55.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

56.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

57.    The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described above.

### Count III – 42 U.S.C. § 1983: Excessive Force

58.    Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

59.    Defendants subjected Anthony Ramirez and James Ramirez to excessive force in violation of the Fourth Amendment.

60.    As a result of this misconduct, Anthony and James Ramirez suffered physical and emotional injuries, lost wages, and other damages.

61.    The misconduct was undertaken under the policy and practice of the Chicago Police Department in the manner described above.

### Count IV - Section 1983
### Failure to Intervene

62.    Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

63.    As a result of Defendant Officers' failure to intervene to prevent the

13

unjustified and excessive use of force to which Plaintiffs children were subjected by other Defendant Officers, Plaintiffs suffered pain and injury, as well as emotional distress. These non-intervening Defendant Officers had a reasonable opportunity to prevent the harm had they been so inclined, but failed to do so.

64.     As described in the preceding paragraphs, the conduct of the non-intervening Defendant Officers, acting under color of law and within the scope of their employment, violated the United States Constitution.

65.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to constitutional rights.

66.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

67.     The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described more fully above.

### Count V – 42 U.S.C. § 1983: False Arrest/Unlawful Detention

68.     Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

69.     As described above, Defendants falsely arrested Laura Ramirez on September 7, 2004, Anthony Ramirez on May 26, 2003 and James Ramirez on at least seven occasions (including May 26, 2003) since July 2002.

70.     As described more fully above, Defendants detained James and Anthony Ramirez after their May 2003 for an unreasonable period of time arrest and under

14

unreasonable conditions of confinement in order to falsify evidence to tie them to various crimes.

71.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

72.     As a result of this misconduct, Plaintiff sustained serious emotional injuries.

73.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

74.     As a result of the above-described wrongful infringement of Plaintiffs' rights, they suffered damages, including but not limited to mental distress and anguish.

75.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

### COUNT VI – 42 U.S.C. § 1983: Due Process

76.     Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

77.     As described more fully above, Defendant Officers, while acting under color of law and within the scope of their employment as police officers, violated Plaintiffs' rights to Due Process by tampering with identification, anecdotal, or testimonial evidence. Absent this misconduct, the above-described prosecutions of Anthony, James, and Laura Ramirez could not and would not have been pursued.

78.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

15

79.     The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described more fully above.

## COUNT VII – 42 U.S.C. § 1983
### Conspiracy

80.     Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

81.     As described more fully in the preceding paragraphs, Defendant Officers knowingly acted in concert to deprive Plaintiffs of their Constitutional rights under color of law.

82.     Plaintiffs were deprived of their constitutional rights in the manner described in the preceding paragraphs.

83.     In furtherance of the conspiracy, Defendant Officers committed overt acts of knowingly retaliating against Plaintiffs through the use of their police powers and otherwise were willful participants in joint activity with other state actors acting under color of law.

84.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

85.     As a proximate result of Defendants' conspiracy, Plaintiffs suffered damages, including severe physical and emotional distress and anguish.

86.     The conspirators committing the misconduct described in this Count were motivated by personal bias in terms of their own self-interest

87.     The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described more fully above.

## Count VIII – State Law Claim:
### Illinois Civil Rights Act – 740 ILCS § 23/5(c)(2)

88.   Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

89.   The misconduct described above is a violation of Plaintiffs' rights as secured by the Illinois Constitution.

90.   Specifically, by falsely arresting Plaintiffs, retaliating against Plaintiffs for Laura Ramirez exercising her right to freedom of speech, and inflicting bodily harm, Defendants violated Plaintiffs' inherent and inalienable rights to life, liberty and the pursuit of happiness under Article I, Section 1 of the Illinois Constitution.

91.   Moreover, by retaliating against Plaintiffs  for exercising their right to freedom of speech, Defendants violated Plaintiffs' right to speak, write and publish freely under Article I, Section 4 of the Illinois Constitution.

92.   In addition, by retaliating against Plaintiffs for exercising their right to freedom of speech, Defendants violated Plaintiffs' right to apply for redress of grievances under Article I, Section 5 of the Illinois Constitution.

93.   Furthermore, by falsely arresting Plaintiffs, retaliating against them for exercising their right to freedom of speech, and causing them bodily harm, Defendants violated each of Plaintiffs' rights to be secure in their person against unreasonable searches, seizures, and invasions of privacy under Article I, Section 6 of the Illinois Constitution.

94.   The misconduct described in this Count was undertaken with malice,

17

willfulness, and reckless indifference to the rights of others

95. As a result of these deprivations of Plaintiffs' rights as secured by the Illinois Constitution, they have suffered damages, including but not limited to attorneys' fees and costs, for which Defendants are liable.

96. The misconduct described in this Count was undertaken by Defendants within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for the actions.

### COUNT IX – State Law Claim: Malicious Prosecution

97. Plaintiffs reallege all paragraphs in this Complaint as if fully stated herein.

98. Plaintiffs were improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiffs' favor in manners indicative of innocence.

99. Defendant Officers accused Plaintiffs of criminal activity knowing those accusations to be without probable cause, and they made written and other statements with the intent of exerting influence to institute and continue judicial proceedings.

100. Statements of the Defendant Officers regarding Plaintiffs' alleged culpability were made with knowledge that the statements were false and perjured. In so doing, the Defendant Officers fabricated evidence and withheld exculpatory information.

101. The misconduct described in this Count was undertaken with malice,

18

willfulness, and reckless indifference to the rights of others.

102. As a result of the above-described wrongful infringement of Plaintiff's rights, he has suffered financial and other damages, including but not limited to substantial mental stress and anguish.

103. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for their actions.

### COUNT X – State Law Claim: Civil Conspiracy

104. Plaintiffs reallege all paragraphs in this Complaint as if fully stated herein.

105. As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

106. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

107. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

108. As a proximate result of Defendants' conspiracy, Plaintiffs suffered damages, including physical pain and suffering and severe emotional distress and anguish.

## Count XI – State Law Claim: False Imprisonment

109.    Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

110.    Laura, Anthony and James Ramirez were all arrested and imprisoned, and thereby had their liberty to move about unlawfully restrained, despite Defendants knowledge that there was no probable cause for doing so.

111.    Defendants' actions set forth above were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

112.    As a result of the above-described wrongful infringement of Plaintiffs' rights, Plaintiffs suffered damages, including but not limited to mental distress and anguish.

113.    The misconduct described in this Count was undertaken by Defendants within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for the actions.

## Count XII – State Law Claim: Assault and Battery

114.    Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

115.    As described in the preceding paragraphs, Defendants' conduct , acting under color of law and within the scope of their employment, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing Anthony and James Ramirez's bodily injuries.

116.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Anthony and James Ramirez's constitutional rights.

117.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

118.   As a result of the offensive touching, Anthony and James Ramirez sustained bodily injuries, including but not limited to a reasonable apprehension of great bodily harm.

119.   The misconduct described in this Count was undertaken by Defendants within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for the actions.

### Count XIII - State Law Claim
### Trespass

120.   Plaintiffs restate all Paragraphs of this Complaint as if fully stated herein.

121.   In the manner described more fully above, Defendants did knowingly and intentionally intrude upon Plaintiffs' premises, in which they had possessory interests.

122.   As a result of the Defendants' unjustified and unlawful trespass, Plaintiffs suffered injury, including emotional distress.

## COUNT XIV – State Law Claim
### Intentional Infliction of Emotional Distress

123.    Plaintiff reallege all paragraphs in this Complaint as if fully stated herein.

124.    The acts and conduct of Defendant Officers as set forth above were extreme and outrageous. Defendant Officers intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiffs.

125.    Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiffs and thereby constituted intentional infliction of emotional distress.

126.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

127.    As a proximate result of Defendants' wrongful acts, Plaintiffs suffered damages, including severe emotional distress and anguish.

## Count XV – State Law Claim: *Respondeat Superior*

128.    Plaintiffs reallege the foregoing paragraphs as if fully stated herein.

129.    In committing the acts alleged in the preceding paragraphs, Defendants were members and agents of the Chicago Police Department, acting at all relevant times within the scope of their employment.

130.    Defendant City of Chicago is liable as the principal for all torts committed by its agents.

22

### Count XVI – State Law Claim: Indemnification

131.    Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

132.    In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102

133.    Defendants are or were employees of the City of Chicago, and acted within the scope of their employment in committing the misconduct described herein.

### Request for Relief

Plaintiffs, Laura Ramirez, Anthony Ramirez and James Ramirez, respectfully requests that the Court:

A.    enter judgment in their favor and against Defendants, CITY OF CHICAGO, CHICAGO POLICE OFFICERS CESAR CLAUDIO (Star No. 19132), MIKE WALSH, JOHN JOHNSON, M. O'DONNELL (Star No. 6029), TIMOTHY SHANAHAN (Star No. 12531), EGAN, HAROLD, FINNEGAN, LIEUTENANT ERNEST, SERGEANT COLE, and AS-YET UNKNOWN CHICAGO POLICE OFFICERS;

B.    award compensatory damages against Defendants, CITY OF CHICAGO, CHICAGO POLICE OFFICERS CESAR CLAUDIO (Star No. 19132), MIKE WALSH, JOHN JOHNSON, M. O'DONNELL (Star No. 6029), TIMOTHY SHANAHAN (Star No. 12531), EGAN, HAROLD, FINNEGAN, LIEUTENANT

ERNEST, SERGEANT COLE, and AS-YET UNKNOWN CHICAGO POLICE

OFFICERS;

C.    award attorneys' fees against Defendants, CITY OF CHICAGO, CHICAGO

POLICE OFFICERS CESAR CLAUDIO (Star No. 19132), MIKE WALSH,

JOHN JOHNSON, M. O'DONNELL (Star No. 6029), TIMOTHY SHANAHAN

(Star No. 12531), EGAN, HAROLD, FINNEGAN, LIEUTENANT ERNEST,

SERGEANT COLE, and AS-YET UNKNOWN CHICAGO POLICE OFFICERS;

D.    award punitive damages against Defendants CHICAGO POLICE OFFICERS

CESAR CLAUDIO (Star No. 19132), MIKE WALSH, JOHN JOHNSON, M.

O'DONNELL (Star No. 6029), TIMOTHY SHANAHAN (Star No. 12531),

EGAN, HAROLD, FINNEGAN, LIEUTENANT ERNEST, SERGEANT COLE,

and AS-YET UNKNOWN CHICAGO POLICE OFFICERS; and

E.    grant any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs, Laura Ramirez, Anthony Ramirez and James Ramirez, demand a trial by

jury under Federal Rule of Civil Procedure 38(b) on all issues so triable.

24

RESPECTFULLY SUBMITTED,

Attorneys for Plaintiffs

Arthur Loevy
Jon Loevy
Mark Reyes
LOEVY & LOEVY
312 North May Street, Ste. 100
Chicago, IL 60607
(312) 243-5900