IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAURA RAMIREZ, et al.,         )
                               )
            Plaintiffs,        )
                               )
    v.                         )    No. 05 C 317
                               )
CITY OF CHICAGO, et al.,       )
                               )
            Defendants.        )

MEMORANDUM OPINION AND ORDER

Although this long-pending case has produced two false starts in the parties' efforts to generate a joint final pretrial order ("FPTO") that will be suitable for entry as establishing the game plan for trial, the second of those submissions has resulted in the identification of a number of motions in limine and the exchange of memoranda regarding those motions. This memorandum opinion and order addresses the motions in anticipation of the receipt of what is hoped to be a proper FPTO suitable for entry.

### Plaintiffs' Motions[1]

Motion 1 seeks to keep out of the case what plaintiffs' counsel characterize as "all irrelevant arrests that did not lead to convictions and all related arrest records." That and all other plaintiffs' motions have been responded to by virtually all

---

[1] Three members of the Ramirez family—Laura and her two sons, James and Anthony—are coplaintiffs. Where any of them is referred to individually in this opinion, his or her identification will employ only his or her first name.

of the named defendants: City of Chicago ("City") and its police officers Cesar Claudio, Christine Deierl, Carson Earnest, Michael Egan, Lawrence Herhold, Robin Mahoney, Timothy Shanahan, Tim Silder and James Vins ("Vins")(collectively "Defendants"[2]).

As to Motion 1, Defendants' Responses to Plaintiff's [sic] Motions In Limine (cited "D. Resp. --") states at page 2:

> To be clear, it is unlikely that Defendants will seek to introduce arrest reports into evidence at trial, however, Defendants have identified the arrest reports as Exhibits in the event they become necessary.

This Court will take Defendants at their word and grant Motion 1,[3] but with the understanding that if, in what would seem to be an unlikely event, plaintiffs' offered testimony at trial states or suggests the absence of any prior arrests, an appropriate limited modification of this ruling may be considered at that time.

Motion 2 seeks to bar "all references stating or implying that any plaintiff or witness was in a gang." In today's societal environment, gang membership or affiliation is of particular concern because of the serious potential for

---

[2] This Court's understanding is that the only named defendants not embraced within that collective term are Jerome Finnegan and Carl Suchocki ("Suchocki"). As the later discussion reflects, Suchocki has separately filed his own motions in limine, to which plaintiffs have just responded.

[3] In that respect, this Court rejects the rationalizations thereafter offered in D. Resp. that seek to back away from that initial assurance.

2

generating unfair prejudice. Our Court of Appeals has recognized as much in such cases as United States v. Irvin, 87 F.3d 860, 865 (7th Cir. 1996):

> Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict. Guilt by association is a genuine concern whenever gang evidence is admitted.

Here D. Resp. 9 refers (1) to James' acknowledgment of his then-existing gang affiliation at the time of a pre-July-2002 arrest and (2) to a later Report of Investigation authored by codefendant Vins. But absent some better evidentiary handle to the events at issue in this litigation (for which purpose Vins' ipse dixit does not qualify), both that and any other matters referred to by Defendants appear to pose a major danger of being considered propensity evidence barred by Fed. R. Evid. ("Rule") 404(b).

Even more critically, the overriding danger of unfair prejudice due to the inflammatory nature of gang references calls for the rejection of any such references under Rule 403. That has been recognized and applied not only by Irvin but by a flock of cases cited at P. Mem. 13.[4] Hence Motion 2 is also granted.

Motion 3 challenges the introduction of evidence that

---

[4] "P. Mem. --" references are to the Plaintiffs' Motions in Limine submission.

3

plaintiffs and their family have been victims of crime or have called police to report possible crimes against them. In these days, when (for example) random shootings seem to occupy the "breaking news" slot in local television stations' 10 p.m. news almost nightly, Defendants' excuses for the possible admissibility of such evidence seem to turn the world on its head.

Despite those attempted excuses, D. Resp. 11 does offer this disclaimer:

> To be clear, Defendants do not intend to introduce such evidence at trial, but may use the evidence in rebuttal or to impeach Plaintiffs' testimony.

Again Defendants will be taken at their word in the first respect. But as to the latter prospect, that seems to involve an unlikely stretch and will not be dealt with at this point. Accordingly Motion 3 is also granted (certainly at least for the present).

Motion 4 is a direct invocation of Rule 404(b) to bar "all prior bad act evidence." D. Resp. 11-13 again reflects Defendants' desire to expand the litigation well beyond its defined boundaries--the classic purpose that Rule 404(b)'s exclusion of propensity evidence was designed to block. This Court expects the trial to focus on the matters at issue, with no such "other acts" evidence coming into the case unless plaintiffs' counsel unwisely invites it by the nature of the

4

evidence offered during plaintiffs' case in chief.  Motion 4 is granted as well.

Motion 5 seeks to preclude testimony by any witness not disclosed in discovery.  D. Resp. 13 agrees in general (subject to the possibility that previously-undisclosed rebuttal witnesses will have to be called, a matter that does not require ruling at this time).  Hence Motion 5 is granted as well.

Motion 6 asks, in referring to a videotape taken by one of plaintiffs' neighbors (Plaintiffs' Ex. 41), to keep the audio portion of that videotape out of the case.  D. Resp. 14 objects to the admissibility of the tape itself as assertedly irrelevant--but if the tape does come in, they wish to have the jury hear the audio as well.  This Court has not had the opportunity to view or listen to the tape, so that all that can be done at this time is to rule on a tentative basis.  In those terms it would appear likely that the tape would be admissible (a contingent ruling), while the audio portion would be extraneous and inadmissible (again a tentative ruling).  For the present, then, Motion 6 is granted.

Motion 7 asks to bar reference to a nickname attached to James back in the mid-1990s.  D. Resp. 13, even though stating the lack of any intention to introduce such evidence, still opposes the motion "as nicknames may be relevant."  Once again that hedge seems inappropriate, and Motion 7 is granted as well.

Defendants' Motions

Motion 1 seeks to bifurcate the trial.  Plaintiffs correctly counter in their responsive memorandum (cited "P. Resp. --") that such a move to separate Monell claims against the City from the claims against individual Defendants "is not only unworkable, it would be a detriment to judicial economy and would prejudice Plaintiffs."  On that score P. Resp. 2-11 is persuasive, and Motion 1 is denied.

Motion 2 asks to bar evidence of the "FOP Disclaimer," under which officers who are asked to respond to internal police investigation of asserted misconduct had stated, along the lines suggested by the Fraternal Order of Police, "I am not giving this statement voluntarily but under duress.  I am only giving this statement at this time because I was ordered to do so and I know I could lose my job if I refuse."  From P. Resp. 12 it appears that no fewer than four of this Court's colleagues have rejected like motions in 42 U.S.C. §1983 ("Section 1983") cases before them, and this Court sees no reason to depart from those rulings. Motion 2 is also denied.

Motion 3 seeks to exclude witnesses from viewing other witnesses' testimony or reviewing the transcripts of such testimony before the witnesses are themselves called.  P. Resp. 17 agrees, and Motion 3 is granted on a reciprocal basis.

Motion 4 asks that plaintiffs not be permitted to introduce

evidence of a very large number of parking tickets issued to them--such tickets being offered by plaintiffs to evidence harassment (as plaintiffs have it, no parking violations had in fact taken place). Defendants argue mistakenly that such citations "are inadmissible hearsay" and should be excluded on that basis.

That of course is dead wrong, for the tickets are being offered for the fact of their issuance and not for the truth of their contents. Moreover, if the tickets were indeed offered for hearsay purposes (and they are not), they would be potentially within the Rule 803(8) hearsay exception anyway. Nor is such evidence excludable, as Defendants claim, by reason of the fact that some tickets were not written by the individually named Defendants here (see P. Resp. 20). In sum, Motion 4 is denied.

Motion 5 seeks to bar what Defendants characterize as "generalized evidence of alleged police code of silence." P. Resp. 21-23 recharacterizes such evidence and related argument as going to the issue of police officers' bias or motivation. As such, the various cases cited by plaintiffs have denied such blanket motions in limine--as this Court has put it in an earlier case, "without prejudice to the reassertion of any objections on this score in the context of specific evidence when proffered at trial." That concept is equally applicable here, so that Motion 5 is denied for now.

Motion 6 seeks "to bar mention of sending a message to the City." P. Resp. 24 agrees, while making it clear that an argument along similar lines is permissible in the course of seeking punitive damages against the individual Defendants (see also Seventh Circuit Pattern Civil Jury Instruction No. 3.13). So Motion 6 as framed is granted by agreement.

Motion 7 seeks "to bar witnesses from commenting on the credibility or veracity of other witnesses." P. Resp. 25 states correctly that such a bar is generally appropriate, while at the same time such provisions as Rule 608 call for the admissibility of such testimony in certain respects. Hence Motion 7 is granted in general terms, subject to being revisited if and when the issue may come up in the specific context of the trial.

Motion 8 attempts to keep out of the case any mention of City's rules and regulations. That position is ill-considered, because it impermissibly conflates the issue of constitutional violations (for which purpose the violation of City rules and regulations or Police General Orders does not fill the bill) with relevance on other grounds. Accordingly Motion 8 as stated is overbroad, and it is denied.

Motion 9 seeks to bar the testimony of plaintiffs' proposed opinion witness Steven Whitman ("Whitman"). Although it appears that Whitman's field of specialty is that of epidemiology,

concededly not at issue in this case,[5] plaintiffs rely not on that specialty but rather on his skills as a statistician in the course of his work (among other things, his CV includes a PhD in biostatisics from Yale and the teaching of mathematics at the university level). This Court will continue to study Defendants' Motion 9 and P. Resp. 29-42, but certainly for the present it appears appropriate to admit the Whitman report and testimony under Daubert-Kumho principles as a gatekeeping matter, with the trier of fact being enabled to evaluate that material under an appropriate jury instruction. Motion 9 is denied for now.

Motion 10 seeks to bar the testimony of Dr. Howard Sweeney, one of Laura's treating doctors, because no Fed. R. Civ. P. 26(a)(2)(B) report was prepared by Dr. Sweeney. Defendants attempt to call on Musser v. Gentiva Health Servs., 356 F.3d 751 (7th Cir. 2004) in purported support of their position. But although Musser, id. at 756-57 held that the amendment to Fed. R. Civ. P. 26(a)(2)(A) required the disclosure of the identity of any witness proffered under Rule 702 (something not at issue here), Musser, id. at 758 n.3 expressly disclaimed ruling on the question whether a treating physician had to submit a Fed. R. Civ. P. 26(a)(2)(B) report.

---

[5] If this Court were inclined to cater to its own predilection toward punning and other word games, it might draw on its observation of the almost innumerable complaints (and many proved instances) of Chicago police misconduct to label that misconduct as "epidemic" in nature. It refrains from doing so.

In this instance it appears that Dr. Sweeney is expected to testify as to his treatment and as to his diagnosis (including possible causation) formulated during the course of that treatment. Most of the caselaw supports plaintiffs' position rather than Defendants'. Motion 10 is denied.

Finally, Motion 11 seeks "to bar any evidence or testimony regarding unrelated complaint registers" ("CRs"). P. Resp. 47-52 identifies more than one ground for rejecting that motion. Although this Court expects to take care to avoid the impermissible introduction of such CRs at trial as propensity evidence (and hence as precluded under Rule 404(b)), the appropriate ruling now is to deny Motion 11 as such.

## Suchocki's Motions

Motion 1 seeks to bar any references to Suchocki's criminal indictment (recently dismissed by the Cook County State's Attorney) or to any criminal indictment of any other police officer. Plaintiffs respond by agreeing to that motion as to Suchocki himself, though they hedge somewhat because of the possibility (which seems unlikely) that some trial development might alter that result. As to other officers, though, Suchocki would appear to lack standing to raise the issue--and if not, it is impossible to tell at this point how such evidence might or might not become admissible. That component of Motion 1 is therefore denied.

10

Suchocki's other motion, Motion 2, asks to "bar any adverse inference or any reference to Carl Suchocki's invoking his 5th Amendment privilege." That position has been unsound for more than three decades--ever since the Supreme Court decided Baxter v. Palmigiano, 425 U.S. 308, 317 (1976).[6] And plaintiffs go on to advance particular reasons that further support the denial of Motion 2. Hence the Motion is rejected for more reasons than one.

## Conclusion

As to plaintiffs' motions in limine, Motions 1 to 5, 6 (for the present) and 7 are granted. As to Defendants' motions in limine:

1. Motions 1, 2, 4, 8, 10 and 11 are denied.

2. Motion 3 is granted by agreement (to operate on a reciprocal basis), Motion 6 is also granted and Motion 7 is granted conditionally.

3. Motions 5 and 9 are denied for the present.

Lastly, Suchocki's Motion 1 is granted in part and denied in

---

[6] Indeed, this Court has consistently deferred the efforts of counsel in cases on its calendar to depose parties who are under criminal indictment. It has done so precisely because the invocation of the Fifth Amendment privilege does give rise to adverse inferences in civil cases, although not in criminal cases. That effort to protect the interests of litigants facing such charges has sometimes created undue delays in the disposition of such cases, largely because the state criminal justice system does not seem to apply speedy trial provisions with the same rigor as the federal system does.

11

part, while his Motion 2 is denied.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 17, 2009