UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA RAMIREZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05 C 317 |
| | ) | |
| CITY OF CHICAGO, | ) | Judge Shadur |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RULE 50(a) MOTION
FOR JUDGMENT AS A MATTER OF LAW**

Defendant, City of Chicago, by its undersigned attorneys, pursuant FED. R. CIV. PRO. 50(a), here by moves for Judgment as a Matter of Law. This motion seeks judgment as a matter of law on certain claims brought by Plaintiffs because there is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on those claims. Specifically, based upon the evidence before this jury and the controlling law applicable to the claims, judgment as a matter of law should be entered in Defendant's favor on the on the following claims. The jury trial in this case began on August 1, 2012. As of the filing of this motion, the evidentiary portion of this case is complete but the case has not yet been submitted to the jury.

**1.  Intentional Infliction of Emotional Distress ("IIED")**

Each Plaintiff is making a claim for IIED in this case. In order to prove a claim for IIED. Plaintiffs must establish that 1) the police officers' conduct was extreme and outrageous, 2) intent to inflict severe emotional distress, or knowledge that there was a high probability that the conduct would cause severe emotional distress, and 3) the complained of conduct in fact caused severe

emotional distress. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 268, 7998 N.E.2d 75 (2003) (*citing McGrath v. Fahey*, 126 Ill.2d 78, 533 N.E.2d 806 (1988)).

There is insufficient evidence in this case that any Plaintiff suffered the "severe emotional distress" contemplated by an IIED claim. The only evidence on emotional distress came from Plaintiffs themselves:

Laura Ramirez testified that she felt angry when she was arrested on September 6, 2004. [Transcript attached here as Exhibit A, pg. 74]. She felt violated and was embarrassed because her neighbors saw that she had been arrested. [Trans. p. 74]. While in the holding cell at 51st and Wentworth after her arrest, Laura felt scared and worried about her younger kids, Anthony, and her ex-husband. [Trans. p. 3]. Because of the alleged harassment, Laura felt she was jumping out of her sleep and could not fully concentrate at work. She was worried about her house and kids, and felt embarrassment around her neighbors. [Trans. p.10]. Laura testified that due to the alleged harassment she had to sell her home and move to another area, but in fact she moved from her home more than one year after the final incident of harassment. [Trans. p.10, 12]. Moreover, at around the same time, Laura was diagnosed with hyperthyroidism, and was told by her doctor that the symptoms she was experiencing were connected with being hyperthyroid. [Trans. p. 26-27].

James Ramirez testified that he felt upset and aggravated when his car was towed in January of 2003. [Trans. p. 27]. James felt helpless when he was being hit and struck by the officers in the 8th District during his custody on May 25, 2003. [Trans. p. 49]. James testified that he was upset about the search of his apartment on September 29, 2004, and it was stressful. He testified he was kind of worried that his landlord would be upset about the police entering the apartment. [Trans. p. 83, 84]. He further testified that he was upset over the amount of parking tickets he had, and that

2

the boot that was placed on his car interfered with his work. [Trans. p. 5, 6]. He testified that he felt angry and upset when he was stopped and his daughter was searched by police in the fall or winter of 2003. [Trans. p.14].

Anthony Ramirez testified only that he was upset that he was arrested on September 6, 2004, but that he did not have any emotional scars over it. [Trans. p. 22].

No Plaintiff provided additional evidence relating to each other's emotional distress, let alone the severity of it. No other witness corroborated or provided additional evidence on these issues. Plaintiffs in this case have a legally insufficient evidentiary basis to proceed with IIED claims. The evidence adduced at trial is nothing more than garden-variety emotional distress. This deficiency cannot be overlooked or left for the jury to infer because it is one of the necessary elements of the claims. It was Plaintiffs' burden to present evidence of "severe emotional distress," as that phrase is interpreted by the case law, and they have not done so. "Courts have consistently held that "[a]lthough fright, horror, grief, shame, humiliation, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Redd v. Dougherty*, 578 F. Supp. 2d 1042, 1058 (N.D. Ill. 2008) *citing Sornberger v. City of Knoxville,* 434 F.3d 1006, 1030 (7th Cir.2006). Rather, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Redd v. Dougherty*, 578 F.Supp.2d *citing Honaker v. Smith,* 256 F.3d 477, 495 (7th Cir. 2001). Here, the feelings of anger, fear, and embarrassment which Plaintiffs testified to do not rise to the level of severe emotional distress.

Likewise, Laura Ramirez's sleeplessness and lack of concentration cannot be considered severe emotional distress, especially in light of her diagnosis of hyperthyroidism. *See Lewis v. Weis*, 09 C 2219, 2012 WL 45242 (N.D. Ill. Jan. 5, 2012) (The sleeplessness, sadness, and related feelings

3

that plaintiff suffered from generally is not severe enough to constitute severe emotional distress for purposes of an IIED claim). The jury should not be allowed to speculate about the severity of Plaintiffs' emotional distress, when the actual evidence put on at trial fails as a matter of law to satisfy that element. Because Plaintiffs' evidence at trial is not of a sufficient nature to satisfy the severe emotion distress element of an IIED claim, judgment as a matter of law must be entered in Defendant's favor on these claims. This, of course, does not mean Plaintiffs cannot proceed with damages relating to emotional distress, but they fail as a matter of law on this issue as a distinct claim.

**2.      September 6, 2004 False Arrest and Malicious Prosecution Claims.**

   A.     <u>Anthony Ramirez's Claim for False Arrest</u>

The jury will be instructed that there is probable cause for an arrest if at the moment the arrest was made a prudent person would have believed that a plaintiff had committed or was committing a crime. The test is an objective one and looks at "whether a reasonable police officer would have believed that the person had committed a crime." *Kelley v. Myler*, 149 F. 3d 641, 646 (1998). Although probable cause requires more than a bare suspicion, it does not require evidence "sufficient to support a conviction, nor a showing that the officer's belief is more likely true than false." *Woods v. City of Chicago*, 234 F3d 979, 996 (7th Cir. 2000) (additional citations omitted)

Anthony was arrested based on police dispatch information and various witnesses on the scene who told police officers they saw Anthony running from the mouth of the alley where the shots fired incident had occurred. Moreover, Officer Mahoney testified that he was identified as the shooter by Michael Hederman, one of the witnesses on the scene. Officer Brouder testified that he

4

was informed by a witness that Anthony was the shooter, he broadcast that information over the police radio, and was one of the officers who eventually took Anthony into custody.

There was probable cause, as a matter of law, to arrest Anthony for unlawful use of a weapon. "So long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest." Jenkins v. Keating, 147 F.3d 577, 585 (7th Cir. 1998); see also Sheik-Abdi v. McClellan, 37 F.3d 1240, 1247 (7th Cir. 1994). "If the officer had probable cause to believe that the person he arrested was involved in criminal activity, then a Fourth Amendment claim for false arrest is foreclosed." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 679-80 (7th Cir. 2007).

B.  Laura Ramirez's Claim for False Arrest

Laura was charged with obstruction of a peace officer based upon her directing Anthony into the house. It is undisputed that Laura Ramirez spoke with Officer Johnson and questioned whether the police were truly looking for Anthony. [Trans. p.18]. It is further undisputed that Officer Johnson then requested the OEMC dispatcher to read back the name and description of one of the offenders, at which time the dispatcher read back the name Anthony Ramirez. [Trans. p.19]. Finally, Laura admits that upon hearing the dispatcher name her son, she told Officer Johnson that he was not taking Anthony, she instructed Anthony to go into the house, he did, and the door was locked. [Trans. p.19].

The jury will be instructed that a person commits the offense of resisting or obstructing a peace officer if she knowingly resists or obstructs the performance of any authorized act within the official capacity of one known to her to be a peace officer. In *People v. Baskerville*, the Illinois

5

Supreme Court earlier this year held that "proof of a physical act is not a necessary element of the offense." 2012 IL 111056, ¶1, 963 N.E.2d 898, 900. The Court went on to explain that

> Although a person may commit obstruction of a peace officer by means of a physical act, this type of conduct is neither an essential element of nor the exclusive means of committing an obstruction. The legislative focus of section 31-1(a) is on the tendency of the conduct to interpose an obstacle that impedes or hinders the officer in the performance of his authorized duties. That inquiry is for the trier of fact, based upon the facts and circumstances of each case.
> *Id* at ¶ 23, 963 N.E.2d at 905.[1]

By ordering Anthony into the house, an order Anthony immediately obeyed, and by her statement to Officer Johnson that he was not taking Anthony, she knowingly obstructed the police from arresting Anthony. This is not a case where Laura merely argued with police or verbally resisted Officer Johnson's attempts to speak to Anthony, her instruction to Anthony, his following that order and locking the door clearly obstructed the police officers' ability to arrest Anthony. Based on Laura's own admission, Officer Johnson reasonably believed that she was obstructing Anthony's arrest when she ordered him into the house after Johnson had made it clear that Anthony Ramirez was one of the named offenders involved in a shooting. Anthony Ramirez and Laura Ramirez, therefore the defendant City is entitled to judgment as a matter of law in its favor on their claims of false arrest.

---

[1] In coming to its conclusion, the Court further cited with approval *"People v. Gibbs*, 115 Ill. App. 2d 113, 118-19 (1969) (upholding a conviction for obstructing where the defendant advised suspects being arrested that police had no right to search them, and told suspects to enter private property so police could not search without a warrant, thus frustrating the officers ability to complete the arrests); [as well as generally]... Christopher Hall, Annotation, *What Constitutes Obstructing or Resisting Officer, in Absence of Actual Force*, 66 A.L.R.5th 397 (1999); 67 C.J.S. *Obstructing Justice* § 18 (2002) ("The offense of obstructing or interfering with an officer in the performance of a duty may be committed without any physical obstruction or interference, or without force or violence.")." *Id* at ¶ 22, 963 N.E.2d at 905.

  C.  <u>Laura Ramirez's Claim for Malicious Prosecution</u>

  Laura Ramirez also has a claim for malicious prosecution arising out of her September 6, 2004 arrest for obstruction of justice. To allow her claim for malicious prosecution to be submitted to the jury, there must be a sufficient evidentiary basis to establish: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice and (5) damages resulting to the plaintiff. *Swick v. Liautaud*, 169 Ill.2d 504, 512, 662 N.E.2d 1238 (Ill. 1996). Failure on Plaintiff's part to establish an evidentiary basis on even just one element precludes the claim. *See Id.; Mangus v. Cock Robin Ice Cream Co.*, 52 Ill.App.3d 110, 116, 367 N.E.2d 203 (1st Dist. 1977).

  Laura Ramirez has failed to establish a sufficient evidentiary basis on both the second and third prongs of the required elements. As discussed above, there was probable cause to arrest for obstructing the arrest of her son. The presence of probable cause to arrest is an absolute bar to a claim for malicious prosecution. *See Fernandez v. Perez*, 937 F.2d 368, 371 (7th Cir. 1991). In addition, there is an insufficient evidentiary basis to establish that the proceedings were terminated in Laura Ramirez's favor. The only evidence on this issue came from Laura Ramirez. She testified that the very first time she went to court her case was not called. After all the other cases were finished, the judge asked her "what are you here for" and she responded that she was locked up and that today was her court date. The judge asked her if the police officer was in court, she answered no, and was then told by the judge "you can go." [Trans. p. 8-9] This evidence is legally insufficient to establish the criminal proceedings were terminated in her favor.

Plaintiff has the burden of proving a favorable termination. *See Swick*, 169 Ill.2d at 513, 662 N.E.2d at 1243; *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997). Mere dismissal or non-prosecution of the charges is not enough; there has to be something from which one can draw a positive inference of innocence. *See Swick*, 169 Ill.2d at 513-14, 662 N.E.2d at 1243 ("Only when a plaintiff establishes that the *nolle prosequi* was entered for reasons consistent with his innocence does the plaintiff meet his burden of proof.")

Because the evidence at trial on this issue is not of a sufficient nature to satisfy two prongs of the elements needed to establish Laura Ramirez's malicious prosecution claim, judgment must be entered as a matter of law in Defendant's favor on this claim.

**WHEREFORE**, for the reasons set forth above, Defendant City of Chicago prays that judgment as a matter of law be entered in its favor and against Plaintiffs with respect to all Plaintiffs' claims for intentional infliction of emotional distress, Laura Ramirez's claim for false arrest on September 6, 2004, Anthony Ramirez's claim for false arrest on September 6, 2004, and Laura Ramirez's claim for malicious prosecution in connection with her arrest on September 6, 2004, and for such further relief as this Court deems just and equitable.

Dated: August 12, 2012

                                                        Respectfully submitted,

                                                        By:   *s/ Eileen E. Rosen*

Eileen E. Rosen                                              For Defendant City
Stacy A. Benjamin
Silvia Mercado Masters
ROCK FUSCO & CONNELLY, LLC
321 N. Clark Street, Suite 2200
Chicago, IL 60654
(312) 494-1000
Atty. No. 6217428